# 24-0228-CV

## 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔚𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

*for the*

## 𝔖𝔢𝔠𝔬𝔫𝔡 ℭ𝔦𝔯𝔠𝔲𝔦𝔱

In re: Ex Parte Application of SAUL KLEIN.

Ex Parte Application of SAUL KLEIN,

*Petitioner-Appellant,*

– v. –

ALTARA RK INVESTMENTS LIMITED, ALTARA NK INVESTMENTS
LIMITED, BAHIA VV NK LTD, BAHIA VV RK LTD,

*Movants-Appellees,*

MICHAEL KLEIN,

*Interested Party-Appellee,*

– v. –

EK-VV LIMITED, KIRELAND 83RD STREET CHICAGO, LLC,
KIRELAND BELVIDERE STREET WAUKEGAN, LLC,
KIRELAND COMMERCIAL AVE CHICAGO, LLC, *et al.*,

*Respondent-Intervenor-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT BRIEF FOR APPELLEES

NICHOLAS J. CALUDA
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
700 Louisiana Street, Suite 3900
Houston, Texas 77002
(713) 221-7000

WILLIAM B. ADAMS
LUCAS BENTO
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Counsel for Movants-Appellees Altara RK Investments Limited, Altara
NK Investments Limited, Bahia VV NK Ltd, and Bahia VV RK Ltd*

*(For Continuation of Appearances See Inside Cover)*

 (800) 4-APPEAL • (330801)

KENNETH DAVID
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Co-Counsel for Specified Subset of*
*Respondent-Intervenor-Appellees*
*Limited Liability Entities*

STEVE I. SILVERMAN
ALAN J. KLUGER
MICHAEL J. MARIANI
KLUGER, KAPLAN, SILVERMAN, KATZEN
& LEVINE, P.L.
201 South Biscayne Boulevard,
27th Floor
Miami, Florida 33131
(305) 379-9000

*Counsel for Interested Party-Appellee*
*Michael Klein and Respondent-*
*Intervenor-Appellees Limited*
*Liability Entitites*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Movants-Appellees Altara RK Investments Limited, Altara NK Investments Limited, Bahia VV NK Ltd., and Bahia VV RK Ltd. state as follows:

1.     Altara RK is a privately-held Cayman Islands corporation.  Altara RK is wholly owned by Altara Holdings Limited.  No publicly-traded company owns 10% or more of Altara RK's stock.

2.     Altara NK is a privately-held Cayman Islands corporation.  Altara NK is wholly owned by Altara Holdings Limited.  No publicly-traded company owns 10% or more of Altara NK's stock.

3.     Bahia RK is a privately-held Cayman Islands corporation.  Bahia RK is wholly owned by Altara Holdings Limited.  No publicly-traded company owns 10% or more of Bahia RK's stock.

4.     Bahia NK is a privately-held Cayman Islands corporation.  Bahia NK is wholly owned by Altara Holdings Limited.  No publicly-traded company owns 10% or more of Bahia NK's stock.

5.     Altara Holdings Limited, a privately-held Cayman Islands corporation, has no parent corporation and no publicly-traded company owns 10% or more of its stock.

*/s/ William B. Adams*
William B. Adams

i

Pursuant to Federal Rule of Appellate Procedure 26.1, Respondent-Intervenor-Appellees Limited Liability Entities state that a number of the Respondent-Intervenor-Appellees Limited Liability Entities have parent corporations, but none are publicly held and there is no publicly held corporation that owns 10% or more of stock of either the Respondent-Intervenor-Appellees Limited Liability Entities or their respective parents.

*/s/ Alan J. Kluger*

Alan J. Kluger

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT .................................................i

TABLE OF AUTHORITIES ....................................................................v

PRELIMINARY STATEMENT ................................................................1

COUNTER-STATEMENT OF THE ISSUES .............................................4

COUNTER-STATEMENT OF THE CASE ................................................4

    A.    Samuel's Success And Death ....................................................4

    B.    The Brazilian Civil Proceedings ...............................................5

        1.    The Probate Proceeding ...................................................5

        2.    The Other Proceedings......................................................7

    C.    The Brazilian Criminal Investigation .......................................9

    D.    Saul's Section 1782 Action ....................................................10

        1.    Saul's Application............................................................10

        2.    Saul's Concessions At Oral Argument ....................................11

        3.    The District Court's Order Quashing The Subpoenas.............14

SUMMARY OF ARGUMENT ..............................................................17

STANDARD OF REVIEW ....................................................................19

ARGUMENT ......................................................................................20

I.    THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING SAUL'S SECTION 1782 APPLICATION .................................................................21

    A.    Saul's Fishing-Expedition Application Fails *Intel* Factor Four..........22

    B.    The Other *Intel* Factors Favor Denying Saul's Application ..............29

    C.    Saul's Quibbles With The District Court's Analysis Do Not Show An Abuse Of Discretion........................................33

II.    ALTERNATIVELY, SAUL FAILED TO SATISFY THE "FOR USE" FACTOR........................................................34

    A.    Saul Has Forfeited Any Argument On The "For Use" Factor...........35

    B.    The Discovery Is Not "For Use" In A Foreign Proceeding ...............36

CONCLUSION ..................................................................................39

CERTIFICATE OF COMPLIANCE.......................................................41

CERTIFICATE OF SERVICE ..............................................................42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 28 U.S.C. 1782 of Okean B.V. & Logistic Sol. Intern.*,
2013 WL 4744817 (S.D.N.Y. Sept. 4, 2013) ....................................34

*Ex parte Abdalla*,
2021 WL 168469 (S.D.N.Y. Jan. 19, 2021) ....................................26

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*,
485 F.3d 85 (2d Cir. 2007) ....................................36

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ....................................37

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Intern.*
*(USA) Ltd.*,
785 F. Supp. 2d 434 (S.D.N.Y. 2011) ....................................26

*In re Alghanim*,
2022 WL 1423088 (S.D.N.Y. May 5, 2022) ....................................26, 32

*In re Application of Hornbeam Corp.*,
2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ....................................31

*In re Application of Lake Holding & Fin. S.A.*,
2021 WL 2581427 (S.D.N.Y. June 23, 2021) ....................................31

*In re Application of Passport Special Opportunities Master Fund, LP*,
2016 WL 844833 (S.D.N.Y. Mar. 1, 2016) ....................................34

*In re Application of Setraco Nigeria Ltd.*,
2013 WL 3153902 (M.D. Fla. June 19, 2013) ....................................31

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. &*
*Logistic Sol.*,
60 F. Supp. 3d 419 (S.D.N.Y. 2014) ....................................34

*In re Asia Maritime Pacific Ltd.*,
253 F. Supp. 3d 701 (S.D.N.Y. 2015) ....................................25

v

*In re Caterpillar Credito*,
2023 WL 6938264 (S.D.N.Y. Oct. 20, 2023)....................................31

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, LLP*,
798 F.3d 113 (2d Cir. 2015) ...............................19, 20, 35, 38

*In re Demetriades*,
58 F.4th 37 (2d Cir. 2023) ...................................................35

*In re DNG FZE*,
2024 WL 124694 (S.D.N.Y. Jan. 11, 2024) ........................34

*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) ...................................................24

*Fonseca v. Blumenthal*,
620 F.2d 322 (2d Cir. 1980) .............................................39

*Frasers Group PLC v. Gorman*,
2023 WL 6938284 (S.D.N.Y. Oct. 19, 2023), *aff'd*, 95 F.4th 54 (2d
Cir. 2024) ....................................................................... 34

*Frasers Group PLC v. Stanley*,
95 F.4th 54 (2d Cir. 2024) .........................20, 21, 22, 29, 34

*In re Furstenberg Fin. SAS*,
2018 WL 3392882 (S.D.N.Y. July 12, 2018)....................31

*Gross v. Rell*,
585 F.3d 72 (2d Cir. 2009) .............................................35

*IJK Palm v. Anholt Services USA, Inc.*,
33 F.4th 669 (2d Cir. 2022) ...........................................38

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)..................................20, 21, 27, 30

*In re Iraq Telecom Ltd.*,
2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019)....................31

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018) ...............................20, 27, 33

vi

*In re Kivisto*,
521 F. App'x 886 (11th Cir. 2013) ....................................................26

*In re Kreke Immobilien KG*,
2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013)....................................23

*In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*,
385 F.2d 1017 (2d Cir. 1967) ............................................................39

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) .......................................................22, 37

*Meyer v. Seidel*,
89 F.4th 117 (2d Cir. 2023) ..............................................................36

*In re Microsoft Corp.*,
428 F. Supp. 2d 188 (S.D.N.Y. 2006) ..............................................30

*In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015)................................23, 26

*Nagle v. Marron*,
663 F.3d 100 (2d Cir. 2011) ..............................................................32

*Nascimento v. Faria*,
600 F. App'x 811 (2d Cir. 2015) .......................................................33

*In re Porsche Automobil Holding SE*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) .....................................30

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
634 F.3d 557 (9th Cir. 2011) .............................................................26

*Purolite Corp. v. Hitachi Am., Ltd.*,
2017 WL 1906905 (S.D.N.Y. May 9, 2017) .....................................34

*In re Request for Jud. Assistance from Dist. Ct. in Svitavy, Czech Republic*,
748 F. Supp. 2d 522 (E.D. Va. 2010) ...............................................30

*Tripathy v. McKoy*,
103 F.4th 106 (2d Cir. 2024) ............................................................36

vii

*Tru-Art Sign Co., Inc. v. Local 137 Sheet Metal Workers Int'l Ass'n*,
  852 F.3d 217 (2d Cir. 2017) ..................................................................34

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
  2020 WL 2793055 (S.D.N.Y. May 29, 2020) .....................................34

*Vaigasi v. Solow Mgmt. Corp.*,
  2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) .......................................22

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
  596 U.S. 619 (2022)..............................................................................39

### Statutes

28 U.S.C. § 1782(a) ................................................................*passim*

### Other Authorities

Fed. R. Civ. P. 26 ..............................................................22, 25

Fed. R. App. P. 28(a) .............................................................28

## PRELIMINARY STATEMENT

Through 28 U.S.C. § 1782, Congress authorized district courts to permit discovery from U.S. companies and individuals for use in proceedings before foreign tribunals. The decision to grant or deny a Section 1782 application rests in the district court's considerable discretion. So when a Section 1782 petitioner repeatedly concedes—point blank—before the district court that he has absolutely *no* factual basis for selecting the target entities in his Section 1782 subpoenas, the court acts well within that discretion to quash the petitioner's impermissible fishing expedition. That is what happened here. Affirmance is warranted for that reason, among others.

Appellant Saul Klein filed a Section 1782 application in the U.S. District Court for the Southern District of New York. He sought vast amounts of documents from twelve financial institutions spanning a ten-year period. He hopes to use these documents (if they exist) to support his view that his brother, Appellee Michael Klein, hid assets from the estate of their father, Samuel Klein, who was a successful businessman in Brazil. Upon that supposed basis and through a maze of civil and criminal proceedings in Brazil, Saul seeks to undue the amicable settlement of Samuel's estate—a settlement that all his heirs, including Saul, agreed to in 2015.

Michael and the Appellee entities that he and his sister, Eva Klein, control intervened and moved to vacate and quash the Section 1782 subpoenas. Soon

1

thereafter, the Appellee entities owned and controlled by Michael's children, Raphael and Natalie Klein, who also inherited from Samuel, likewise moved to vacate and quash Saul's Section 1782 subpoenas. The U.S. District Court for the Southern District of New York (Engelmayer, J.) granted the motions and quashed Saul's Section 1782 subpoenas. This Court should affirm that order.

*First*, at oral argument on the motions, Saul's counsel repeatedly conceded that the factual basis for seeking discovery from the twelve targeted financial institutions was limited to a single document. And that one exhibit ended up having no connection at all to the institutions or the Southern District of New York. For Saul, it was enough that he merely suspected that Michael and other related entities *may* have conducted *some* financial transactions in the United States. Indeed, counsel admitted that Saul could have "chosen 100 more [financial institutions] and [Saul] would have no less evidence as to them." A1322. Based on these concessions and on its significant experience in Section 1782 cases, the court found that Saul was "to an exceptional degree" engaged in an "archetypal fishing expedition" (SPA25) that would not serve the twin purposes of Section 1782 and had "the potential to be a vehicle for harassment." SPA27 (quotations omitted).

Because of this finding, the district court exercised its discretion to deny Saul's Section 1782 application and quash the subpoenas. The fishing-expedition finding bears on the fourth discretionary *Intel* factor—undue burden. But as many

courts have ruled, a finding that a petitioner is engaged in a fishing expedition suffices on its own and outside the traditional *Intel* factors to deny an application. And, beyond that, as the district court concluded, the other *Intel* factors also favored denying the application or were neutral. On this record, the court was well within its discretion in denying Saul's Section 1782 application.

*Second*, although the Court need not reach the statutory "for use" requirement, Saul also fails to meet it. The district court addressed that requirement, and this Court reviews it *de novo*. Yet Saul all but ignores it, offering one conclusory paragraph and thus forfeiting any "for use" argument. In any event, the district court's conclusions were correct. Saul cannot meet the "for use" requirement because (1) in the civil proceedings, the statute of limitations would bar any use of the documents sought here; and (2) in the criminal investigation, all Saul can do is submit information to the Brazilian police in the hopes that doing so may eventually lead to a criminal proceeding before a Brazilian tribunal—something this Court has held does not cut it.

For these reasons and as further explained below, the district court's order granting the motions to vacate and quashing Saul's Section 1782 subpoenas should be affirmed.

## COUNTER-STATEMENT OF THE ISSUES

**1.** Whether a district court properly exercises its discretion in denying a Section 1782 application where the petitioner concedes that he lacks any factual basis to seek discovery from the targeted financial institutions and where none of the other *Intel* discretionary factors favor granting the application.

**2.** Whether a Section 1782 application should be denied for failure to meet the statutory requirement that discovery be "for use in a proceeding" in a foreign "tribunal," where the statute of limitations would preclude use in the relevant civil proceedings and any use in the criminal context would be limited to a police investigation.

## COUNTER-STATEMENT OF THE CASE

### A. Samuel's Success And Death

Samuel Klein was a successful businessman who founded Casa Bahia, a major retail and furniture store chain in Brazil, and eventually became one of Brazil's wealthiest persons. SPA3. His early life, however, was exceedingly difficult. Samuel escaped from a Nazi labor camp while being transported to Auschwitz. SPA2. He eventually immigrated to Brazil and went door-to-door selling home-goods from a pushcart. SPA3. For years Samuel saved what he earned, and he eventually was able to purchase Casa Bahia in an industrial suburb on the outskirts of São Paulo. SPA3. Samuel grew that single store into hundreds more. SPA3.

4

Samuel had three children—Michael, Saul, and Eva—and several grandchildren, including Michael's children Raphael and Natalie. SPA3. Michael is a respected businessman who devoted his life to working alongside his father in the Casa Bahia business. A600 n.5. Under his leadership, Casa Bahia became the largest retail company in Brazil. A600 n.5. Although Saul also worked for Casa Bahia for a time, he left in 2009 due to a disagreement over the company's direction. A25; A78 (¶19). He currently has significant legal problems in Brazil. For example, Saul is facing R\$ 30 million of civil judgments and a slew of criminal charges. A600 n.5; A1039 n.1. Natalie and Raphael also share in the ownership of Casa Bahia through the Altara and Bahia entities. A27.[1]

In November 2014, at the age of 91, Samuel died—setting off the events that led to this Section 1782 action and Saul's efforts to secure more of Samuel's estate than he was otherwise entitled.

## B. The Brazilian Civil Proceedings

### 1. The Probate Proceeding

In early 2015, Michael opened a probate proceeding in Brazil in the 4th Civil Court of São Caetano do Sul, São Paulo State Courts and was appointed

---

[1] Specifically, Natalie owns and controls Appellees Altara RK Investments Limited, Altara NK Investments Limited, Bahia VV NK Ltd., and Bahia VV RK Ltd. A970-71; A995 (¶2). Raphael, through a secondary trust, is the beneficiary of a trust holding shares in the Altara and Bahia entities. A970-971; A995 (¶2).

5

administrator of Samuel's estate. A600; A629 (¶¶10, 12); A971. Under Brazilian succession law, Saul was entitled, at most, to 1/3 (*i.e.*, the split between Michael, Eva, and Saul) of 50% of Samuel's estate—the necessary-heir half—which amounts to approximately 16.67%. SPA4; A600; A630 (¶14); A971; A1006 (¶33). Under Samuel's will, the other 50%—the testamentary-heir half—was allocated 50% to Michael, 25% to Altara RK (to benefit Raphael) and 25% to Altara NK (to benefit Natalie).

Despite that required division, Saul actually ended up receiving more than his legally allotted portion. That is because in March 2015, both the necessary and testamentary heirs amicably settled Samuel's estate. The "Memorandum of Understanding" ("MOU") gave Saul approximately 60% of Samuel's total estate (not just the necessary-heir portion) and enabled Saul to withdraw money immediately. SPA4; A630 (¶14); A640-41; A1006 (¶¶32-33). The MOU also contains an exclusive-jurisdiction clause establishing that the parties to the MOU "elect the jurisdiction of the Judicial District of São Caetano do Sul, waiving any other, as privileged as it may be, to resolve any issues that may arise from" the MOU. A989; A193 (¶7.1).

Since executing the MOU, Saul has consistently sought to ratify it and reap its benefits. For example, Saul affirmed the MOU via a Public Deed of Distribution, and, in April 2015, the parties filed the MOU in the Probate Proceeding. A630 (¶15);

6

A972.  At least twice thereafter, and as recently as October 2020, Saul sought to ratify and enforce the MOU in Brazil to benefit himself financially and to accelerate the payments due to him thereunder.  SPA7; A631-32 (¶¶19, 22); A972; A1010 (¶48).  Saul succeeded, and the probate court authorized Saul's withdrawal of substantial amounts allocated to him under the MOU.  SPA7; A632 (¶23); A641 (¶50); A1010 (¶48).

Although the probate proceeding remains open, it remains so solely for the purpose of conducting and completing a paternity investigation initiated by Moacyr Ramos de Paiva Agustinho Junior, who contends that he is Samuel's son and an heir to Samuel's estate.  A1008 (¶40); A1156 (¶23); A630-31 (¶16).[2]

## 2.    The Other Proceedings

Saul was well aware of the decrease in value of Samuel's estate over time on which Saul bases many of his allegations.  Nonetheless, five years after he signed the MOU, he grew paranoid that assets might have been concealed from him and improperly excluded from Samuel's estate—thereby decreasing his inheritance.

---

[2]  The Brazilian courts have repeatedly rejected Saul's attempts to remove Michael as administrator of Samuel's estate.  From 2021 to 2023, Saul sought to remove Michael three times, asserting that Michael engaged in misconduct relating to the administration of the estate.  A607-08; A644 (¶64); A648-49 (¶¶77-78).  The first two actions were dismissed, with the courts concluding they reflected Saul's disagreement with how the estate was administered, not any misconduct.  A648-49 (¶78).  Both rulings were upheld on appeal.  A649-50 (¶84).  The last-filed action remains pending.

7

SPA5; *see* Br. 11-12.  This paranoia led to other actual or contemplated proceedings in Brazil.  Through those proceedings, Saul seeks to fish for evidence that he could use to back up that claim and invalidate the MOU—the same MOU that Saul willingly agreed to, sought to enforce, and reaped substantial benefits.

**The Accounting Proceeding.**  In May 2020, based on Saul's suspicions, Michael initiated an accounting proceeding in the probate court to provide information regarding his management of Samuel's estate.  SPA6; A604; A644 (¶65); A973.  Michael then filed a petition detailing the accounting records of his estate administration.  A604; A644 (¶65); A973.  The parties have filed more than 1,600 pages of documents relating to the accounts, with no finding of wrongdoing. A605; A644 (¶65).  The accounting proceeding remains pending.

**The Discovery Proceedings.**  In April 2023, Saul continued his quest by lodging what he describes (Br. 14) as three "preliminary discovery proceedings in Brazil seeking documents from Michael, Casa Bahia, and his father's estate regarding, among other things, accounting information and information about certain transfers of stock from Samuel in the time immediately before his death." All proceedings were dismissed by the district court.  And although an appellate court has reversed two of those dismissals, ***the district court again dismissed one proceeding*** on remand, finding in September 2023 that Saul was impermissibly engaging in "forum shopping."  A1211.

8

**The Contemplated Proceeding.** According to Saul (Br. 16), he will use the discovery requested in this Section 1782 action to "file an annulment lawsuit with the State Court in São Caetano do Sul arguing that he was deceived and induced to error when signing the MOU" because he did not know the "true total amount of assets" held by Samuel. *See* A42.

The probate proceeding, the accounting proceeding, the discovery proceedings, and the contemplated proceeding will be referred to as the "Civil Proceedings." Through each, Saul ultimately seeks a singular result: invalidation of the MOU that Saul signed.

## C. The Brazilian Criminal Investigation

In June 2023, Saul also initiated a criminal investigation against Michael in Brazil regarding the alleged forgeries of Samuel's signatures on certain corporate documents and on Samuel's 2013 will. A41. These accusations do not account for the expert evidence showing those signatures are authentic or the fact that Michael had Samuel's power of attorney during the relevant period. A602-03; A649 (¶81); A658-59 (¶101); A660 (¶105); Dkt. 31-2. Nevertheless, ***based solely on the evidence that Saul submitted***, the Brazilian police found probable cause to initiate an investigation into the matter. A299 (¶41).

After collecting evidence, the police authority will issue a final report with details about the investigation and its results. A662 (¶111). If the report compels

further action, the investigation would be submitted to the Public Prosecutor's Office (Ministério Público), which only then files a criminal complaint (denúncia) before the criminal court—the equivalent of "pressing charges." A662 (¶111). The information would then be analyzed by a criminal court of competent jurisdiction, which would evaluate whether the defendant should be prosecuted. A662 (¶112). A criminal proceeding would start only after that analysis by the criminal court. A662 (¶112).

### D. Saul's Section 1782 Action

#### 1. Saul's Application

In June 2023, Saul filed his *ex parte* Section 1782 application. It seeks permission to issue sweeping subpoenas to twelve financial institutions. SPA8.[3] The subpoenas target a decade's worth of sensitive and confidential financial documents "relating to any payment, transaction, transfer, conveyance, wire, debit, credit, payment messages and/or payment orders to, from, for the benefit of, on behalf of, or at the request of" Samuel, Michael, and Eva Klein from "January 1 2013 to the present." SPA8. The subpoenas also seek financial documents

---

[3] The twelve financial institutions are: Citibank, N.A.; Banco Santander S.A. New York; Santander Investment Securities Inc. of New York; JPMorgan Chase Bank, N.A.; J.P. Morgan Securities LLC; Credit Suisse (USA), Inc.; Safra National Bank of New York; Itaú S.A. New York Branch; Itaú CorpBanca; Itaú Securities; the Clearing House Payments Company LLC; and the Federal Reserve Bank of New York. A19.

concerning twenty-six companies associated with the Klein family that allegedly engaged in unspecified financial transactions in the United States. SPA8; *see* A62. The application states that the requested documents will allegedly help show that Michael hid some of his father's assets abroad and deprived Saul of his inheritance.[4] A43-44.

The district court granted Saul's *ex parte* application and authorized Saul to serve the subpoenas on the twelve financial institutions. A586; SPA8. After learning that the subpoenas could issue, Appellees intervened and sought to vacate the district court's order and quash the Section 1782 subpoenas. A592; A960. They argued that Saul had failed to satisfy either Section 1782's statutory requirements or the discretionary *Intel* factors.

### 2. Saul's Concessions At Oral Argument

In October 2023, the district court heard oral argument on the motions. The court focused on seeking to understand the factual basis supporting the subpoenas to the twelve financial institutions. A1302-06. The court repeatedly questioned Saul's counsel about the absence of any nexus between the twelve financial institutions and either Michael or any of the affiliated entities, and expressed significant concern about counsel's responses:

---

[4] Although Saul does not allege that Eva herself hid any of their father's assets, the subpoenas seek nearly-unlimited discovery about her purported transactions at the twelve financial institutions.

What's the factual evidence that either Michael or the entities affiliated that are listed in subpoenas actually have accounts at these institutions?

A1319.

What's the reason to think that the specific banks that you want me to authorize the subpoena to have relevant records, those specific banks?

A1320.

If there's nothing that ties a particular bank to the request, I don't see how the request can be granted. You can't just say you're a bank in the United States. I'm asking you to pin down, based on the record that you've presented on this application, something that links up each bank to this controversy as opposed to by guesswork.

A1321.

Saul's counsel responded by indicating that, other than a lone exhibit, Saul

had absolutely no factual basis to subpoena these particular financial institutions, as

opposed to any of the hundreds of other banks in the United States:

THE COURT: OK. Other than the ones that are in Exhibit 11, I'll assume for argument's sake that it's those three, but my staff and I will look at Exhibit 11 afterwards. *But other than what's in Exhibit 11, is there anything, anything in the record, that links any of the banks to this controversy?*

[COUNSEL]: *No, your Honor*, just the list of the assets purchased here, and those assets were purchased with the use of financial institutions and mortgages and ——

THE COURT: Look, how many financial institutions are there in the United States?

[COUNSEL]: Yeah, but ——

THE COURT: Right, there are hundreds, and hopefully the number's not shrinking. There are hundreds of them. *You've chosen 12. By that*

12

> *logic, you could have chosen 100 more, and you would have no less evidence as to them, right?*
>
> [COUNSEL]: *Yes*. But, your Honor, with respect to the clearinghouse payments and also the New York Federal Reserve, they also hold transactions that could have happened regardless of one specific suspicion or the other. So ——
>
> THE COURT: But wait. The Federal Reserve and the clearinghouse, that covers everything. I mean, in other words, I hadn't focused, until Mr. Silverman focused me, on the issue of whether the petitioner has come forward as to each bank explaining what it's doing in this case, *but I'm now concerned that, other than the ones that are listed in Exhibit 11, there may be no factual basis beyond conjecture.*
>
> I'm giving you a last opportunity to point me to something in the record besides Exhibit 11 that justifies directing a subpoena to these particular banks. *Just to be clear, is there anything else you want me to look at?*
>
> [COUNSEL]: *Not in the record, your Honor.*

A1322-23 (emphasis added).

Exhibit 11 is Samuel's 2014 Brazilian tax returns. Given counsel's exclusive reliance on Exhibit 11, the district court instructed Saul to file a "copy of Exhibit 11 highlighting the references to the respondent banks" that would support the application. A1338. In response, Saul highlighted only eight transactions out of the hundreds listed in Exhibit 11. A1221-80. But those transactions all involved *Brazilian entities*, none of which correspond to or are affiliated with the twelve financial institutions targeted by the subpoenas. Nor does the exhibit indicate that any estate accounts or assets are or were being held by those financial institutions.

13

### 3. The District Court's Order Quashing The Subpoenas

In a 28-page opinion, the district court quashed Saul's Section 1782 subpoenas. The court analyzed the statutory requirements and the *Intel* discretionary factors. SPA11-28. But it was the admitted absence of a factual basis for choosing the subpoena targets—specifically, the lack of any connection between those financial institutions and Michael, Eva, or any of the affiliated entities—that the district court found most compelling in denying the application. SPA24-28.

Starting with the statutory requirements, however, the district court concluded that Saul faced "substantial barrier[s]" and "substantial hurdle[s]" in meeting Section 1782's requirement that the documents sought be "for use in a proceeding in a foreign … tribunal." SPA16; SPA18. As to the Civil Proceedings, the court focused on whether the statute of limitations would bar use of the discovery. SPA14-16. On this issue, the court found Appellees' expert's position "considerably more persuasive" than that of Saul's expert. SPA15. The court thus concluded that as to all of the Civil Proceedings, "any attempt by Saul to annul the MOU, signed in 2015, would be time-barred." SPA16. This meant that any documents sought here would not be "for use" in the Civil Proceedings because they could not be "employed with some advantage" in any of those proceedings. SPA13 (quotation omitted).

As to the criminal investigation, the court concluded that Saul appeared to be able only "to forward the evidence he obtains to the Criminal Authority, which,

14

exercising its discretion, will decide whether to initiate a formal criminal prosecution." SPA17-18. The court explained that is simply not enough under this Court's precedent to show the documents sought are "for use" in a "proceeding" before a foreign "tribunal." SPA16-18.

The court nevertheless opted not to "definitively resolve whether the statutory factors are met" because the discretionary analysis "clearly require[s] quashing the subpoenas." SPA11. Based on Saul's concessions that he had no factual basis to seek discovery from any of the twelve financial institutions, the court concluded that "to an exceptional degree," in the court's experience, Saul's application presents as "an archetypal fishing expedition." SPA25 (quotation omitted). As the court explained, Saul's application "could have been made to 12 randomly selected banks in this District and would have no less a factual foundation." SPA26. The court thus determined that the fourth *Intel* factor—undue burden—weighed heavily against the application. SPA24-27.

On top of the fourth *Intel* factor, the district court determined that the other three factors either weighed against granting the application or were neutral. Specifically, the court concluded that the first *Intel* factor—the jurisdictional reach of the Brazilian tribunal—weighed against granting the application because "in substance, [Saul] seeks records of the parties: the bank records of Michael and his adversaries in the Brazilian probate proceedings." SPA19-21. Likewise, it

15

concluded that the third *Intel* factor—circumventing foreign proof-gathering restrictions—weighed against granting the application because Saul was attempting to get around the MOU's exclusive forum-selection clause. SPA22-23. Finally, it concluded that the second *Intel* factor—the nature and receptivity of the Brazilian tribunal—was neutral. SPA21-22.

As permitted by controlling caselaw, the district court additionally considered "other pertinent issues arising from the facts" of the case. SPA27. The court found Saul's concessions to be the pertinent fact that rose above the rest. It explained that Saul's inability to produce any "non-speculative basis for the subpoenas" and his efforts to essentially issue Section 1782 subpoenas in "grapeshot fashion in the hope to discover accounts of his Brazilian adversaries" suggest that his application was a "fishing expedition with the potential to be a vehicle of harassment of Saul's siblings." SPA27 (quotations omitted). Allowing discovery in such a circumstance, the court ruled, would not promote the twin aims of Section 1782, neither providing efficient means of assistance to foreign litigants nor encouraging other countries to offer similar discovery to U.S. litigants. SPA27-28.[5]

Saul's appeal followed.

---

[5] The court also ruled that four of the financial institutions (Itaú S.A. New York Branch, Itaú Securities, Itaú CorpBanca, and Banco Santander S.A. New York) are not "found" in the District—the first statutory requirement. SPA11-13. Saul does not challenge this ruling on appeal. *See* Br. 44 n.5.

16

## SUMMARY OF ARGUMENT

The district court's order granting the motion to vacate and quashing Saul's Section 1782 subpoenas should be affirmed.

**I.** The district court acted well within its discretion in denying Saul's Section 1782 application. Saul's counsel repeatedly conceded that, other than a lone exhibit, Saul had no factual basis to seek discovery from these twelve financial institutions. Indeed, as Saul's counsel acknowledged, Saul could have targeted "100 more banks," and he would have no less a factual foundation. That is the archetypal, impermissible fishing expedition, as the district court correctly found. And the lone exhibit Saul relied upon does not change the calculus because it does not even mention the twelve financial institutions subpoenaed here.

Seeking to escape those concessions, Saul focuses on two of the twelve financial institutions, the Federal Reserve and CHIPS. He claims that he is entitled to issue subpoenas to these entities because they have records of *all* financial transactions in the United States and some entities connected to the Klein family *may* have done business in the United States. But that just further highlights Saul's vast fishing expedition; it does not refute it.

In addition, the district court correctly ruled that two other *Intel* factors support denying Saul's Section 1782 application. Under the first *Intel* factor, Saul again conceded that the documents sought here—largely bank records—could be

17

pursued from Michael and from Saul's other adversaries in the Brazilian probate proceedings. That concession once again resolves this factor. The cases that Saul cites are inapposite because they either focus on the narrow party/non-party status of the Section 1782 target in the foreign proceedings that this Court has rejected, or do not involve the concessions present here. And under the third *Intel* factor, the district court correctly concluded that Saul's Section 1782 application seeks to circumvent the proof-gathering restrictions in the MOU, which selected Brazil as the exclusive forum for disputes that "may arise" from the MOU.

Moreover, the four *Intel* factors are not exhaustive and courts may exercise their discretion in resolving Section 1782 applications based on additional considerations unique to each case. Here, Saul's concessions on the factual basis (or lack thereof) for the subpoenas loomed over everything else. Saul's individual quibbles with discrete parts of the *Intel* analysis fail to show that the district court veered outside its discretion in denying the application based on Saul's concessions.

**II.** Alternatively, this Court should affirm the district court's order on the statutory "for use" requirement. For starters, Saul forfeited any argument on this issue by not adequately briefing it. Saul has the burden to satisfy the "for use" requirement; the district court addressed that requirement; and this Court considers it *de novo*. Yet in his opening brief, Saul does not even hint at how he satisfied that

requirement, let alone explain how the district court erred in its analysis. Saul thus did not preserve the issue.

In any event, as the district court explained, Saul cannot show that the documents sought are actually "for use" in any "proceeding" before a foreign "tribunal." They cannot be used in the Civil Proceedings to any practical advantage because the statute of limitations to invalidate the MOU has run. As for the Criminal Investigation, all Saul can do is hand the documents to the Brazilian police in the hopes that an eventual prosecution may result—a circumstance this Court has held does not satisfy the "for use" requirement.

## <u>STANDARD OF REVIEW</u>

This Court reviews *de novo* the district court's conclusion that a petitioner has met Section 1782's statutory requirements. *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015). When the statutory requirements are met, this Court reviews for abuse of discretion a district court's decision to deny discovery under Section 1782. *Frasers Group. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024). A court abuses its discretion if it "(1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that cannot be located within the range of permissible decisions." *Id.* (quotations omitted).

19

## **ARGUMENT**

Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person ….

28 U.S.C. § 1782(a). An applicant seeking discovery under Section 1782 thus must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery be for use in a proceeding before a foreign tribunal, and (3) the application be made by a foreign or international tribunal or any interested person." *Certain Funds*, 798 F.3d at 117 (quotation omitted). Additionally, "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); *see id.* at 258-59 (applying that standard).

Even after these statutory requirements are met, a court may in its discretion decline to grant a Section 1782 application. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018). Indeed, a court should grant a Section 1782 application only when it would serve the twin aims of the statute—that

20

is, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* (quotation omitted). In conducting that analysis, courts often apply the four *Intel* factors. *Id.*[6] But "[t]he *Intel* factors are not to be applied mechanically. A district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id.* at 245.

Here, the district court properly denied Saul's Section 1782 application after assessing each of the *Intel* factors based on the specific circumstances presented here.

## I. THE DISTRICT COURT ACTED WELL WITHIN ITS DISCRETION IN DENYING SAUL'S SECTION 1782 APPLICATION

The district court properly exercised its discretion in denying the application. Saul's counsel expressly conceded in colloquy with the district court that Saul had ***no factual basis*** to seek discovery from the twelve financial institutions targeted by his Section 1782 application. As the district court put it, Saul's application "could have been made to 12 randomly selected banks in this District and would have no

---

[6] These factors are (1) whether the applicant seeks discovery "for all intents and purposes" from a "participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) "whether the discovery request is unduly intrusive or burdensome." *Frasers*, 95 F.4th at 58 (quotations omitted).

21

less a factual foundation." SPA26. To an "exceptional degree," in the district court's significant experience with Section 1782 applications, Saul's application was an "archetypal fishing expedition" (SPA25) with "the potential to be a vehicle for harassment of Saul's siblings." SPA27 (quotation omitted). It accordingly found the fourth *Intel* factor—undue burden—to strongly favor denying the application.

That determination by itself resolves this case. And though nothing else is needed, two other *Intel* factors also support the district court's denial of the application. Saul does not come close to showing that the district court's denial was so outside "the range of permissible decisions" as to be an abuse of discretion. *Frasers*, 95 F.4th at 58.

## A. Saul's Fishing-Expedition Application Fails *Intel* Factor Four

*Intel* factor four assesses "whether the discovery sought is overbroad or unduly burdensome." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). In conducting this inquiry, courts apply the "familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.* Under those standards, "proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, *14 (S.D.N.Y. Feb. 16, 2016) (citation omitted). For two reasons, those standards are not met here.

22

*First*, as the district court explained, the requests are breathtakingly vast. SPA24-25.  Discovery under Section 1782 is often focused on a "single document or only those documents relating to a single event."  *In re Kreke Immobilien KG*, 2013 WL 5966916, *7 (S.D.N.Y. Nov. 8, 2013), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).  Not here.  Saul seeks "***all*** documents and information from ***12 financial institutions*** relating to ***26 entities*** covering an almost ***11-year*** period."  A1371-72 (emphasis added).  The breadth of that request is sufficient to deny Saul's application.  *See, e.g., In re MT BALTIC SOUL Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, *3 (S.D.N.Y. Oct. 6, 2015) (denying Section 1782 subpoenas to eleven financial institutions because of their "significant breadth").

*Second*, Saul's counsel conceded that Saul had ***no factual basis*** to seek documents from the targeted financial institutions in the first place.  Counsel repeatedly stated that the only evidence possibly linking the targeted financial institutions to this case was a single exhibit containing Samuel's 2014 tax returns:

> THE COURT:  … ***But other than what's in Exhibit 11, is there anything, anything in the record, that links any of the banks to this controversy?***
>
> [COUNSEL]:  ***No, your Honor*** ….
>
> …
>
> THE COURT:  … ***I'm now concerned that, other than the ones that are listed in Exhibit 11, there may be no factual basis beyond***

23

> *conjecture.* … ***Just to be clear, is there anything else you want me to look at?***
>
> [COUNSEL]: ***Not in the record, your Honor.***

A1322-23 (emphasis added). But relying on Exhibit 11 is really relying on nothing at all because that document, Samuel's 2014 Brazilian tax returns, has no connection to the respondent banks. *See supra* p.13. When pressed by the district court, counsel acknowledged that Saul has no greater factual basis for seeking discovery from the twelve targeted financial institutions than any other U.S. financial institution:

> THE COURT: … ***You've chosen 12. By that logic, you could have chosen 100 more, and you would have no less evidence as to them, right?***
>
> [COUNSEL]: ***Yes.***

A1322 (emphasis added). These concessions are definitive; they are binding. *See Dorce v. City of New York*, 2 F.4th 82, 102 (2d Cir. 2021) (holding that plaintiffs "are nevertheless bound by concessions made by their counsel at oral argument" and control over statements in briefs).

Indeed, after the district court gave Saul a chance to resubmit Exhibit 11 "highlighting the references to the respondent banks" that would support the application (A1338), Saul highlighted a couple of entries referring to "Safra JS Adm. de Recursos S/A," "Banco Safra," and "Citibank Fundos de Investimentos." A1221-80. But all of those are ***Brazilian entities***, and none are targets of this Section 1782 application. A1281. As the district court explained, "all of the transactions reflected

24

[in Exhibit 11] appear to have occurred within Brazil; there is no indication whatsoever that U.S. financial institutions were even involved." SPA25; A1281. In light of Saul's concessions and the lack of any support in Exhibit 11 to subpoena these twelve financial institutions, the district court was well within its discretion to conclude that Saul was pursuing an "archetypal fishing expedition." SPA25.

In reaching that conclusion, the district court was sensitive to and did consider that Saul's subpoenas could have cleared the undue-burden factor with only slight factual support because the banks have not claimed an actual production burden. SPA26. But it correctly observed that in normal U.S. discovery, if a party cannot identify *any factual basis* for seeking documents from a third party, a court would be required to quash the subpoena without regard to how onerous production may be. SPA26. The result should be the same in the Section 1782 context, which, after all, is subject to the same Rule 26 standards as normal civil litigation.

The district court's decision to deny Saul's application on this ground is not an outlier. Numerous courts quash Section 1782 applications under *Intel* factor four when the applications smell of a fishing expedition. For example, in *In re Asia Maritime Pacific Ltd.*, 253 F. Supp. 3d 701 (S.D.N.Y. 2015), the court denied an application because, like here, it was an "overly broad fishing expedition that does nothing to further the twin aims of the statute." *Id.* at 705. Just like Saul here, the petitioner in *Asia* "ha[d] provided no basis to believe" that the banks had relevant

information.  *Id.*  Granting an application in such a circumstance could not have been "the example Congress intended to set by authorizing" Section 1782 discovery.  *Id.*  Other cases are in accord.  *See, e.g.*, *MT BALTIC SOUL*, 2015 WL 5824505, at *3 (denying application under *Intel* factor four because the petitioner's "request ha[d] every indication of being an archetypal fishing expedition designed to locate assets to satisfy the English court"); *In re Alghanim*, 2022 WL 1423088, *5 (S.D.N.Y. May 5, 2022) (same); *Ex parte Abdalla*, 2021 WL 168469, *6 (S.D.N.Y. Jan. 19, 2021) (same).

In fact, the fishing-expedition issue is so important and has such a bearing on the aims of the statute that courts often consider it as its own separate factor outside of the traditional *Intel* four-factor framework.  *See, e.g.*, *In re Kivisto*, 521 F. App'x 886, 889 (11th Cir. 2013) (holding that it expects district courts to deny an application when they "suspect[] that the request is a 'fishing expedition' or a vehicle for harassment"); *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563 (9th Cir. 2011) ("The courts have described a wide range of potentially applicable factors to consider in making that discretionary determination," including whether the application is a "fishing expedition."); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("In addition, as with discovery requests in domestic litigation, if a court suspects that the § 1782 discovery request is a fishing expedition

or a vehicle for harassment, the district court should deny the request.") (quotation omitted).  And *Intel* itself—outside of the commonly referenced four factors—noted that probing whether the application is a "fishing expedition" bears on the decision to grant or deny a Section 1782 application.  542 U.S. at 266.

In his opening brief, Saul ignores the oral-argument concessions.  Instead, he attempts (Br. 41) to elude them by narrowly focusing on two of the twelve financial institutions:  the Federal Reserve and CHIPS.  By his account (Br. 41), because the Federal Reserve and CHIPS would contain records of ***all financial transactions*** in the United States, and because Saul identified ***some*** business that Michael and the various entities linked to him and his family members ***may*** have conducted in the United States, Saul should be allowed to serve Section 1782 subpoenas on them. Just stating this proposition confirms Saul's fishing expedition.  It cannot be that any time a foreign litigant has reason to believe ***some*** financial activity occurred in the United States (though it has no idea at which bank(s) or financial institution(s) that activity occurred, assuming it even did occur), it can default to subpoenaing the Federal Reserve and CHIPS to fish for the answer.  That is not the efficient means of assistance that Section 1782 was meant to promote.  Nor is there any reason to think that foreign courts would indulge U.S. litigants seeking discovery in foreign countries in such a fashion.  *Kiobel*, 895 F.3d at 244 (listing twin aims of statute).

27

And although Saul cites (Br. 43-44) a few district court cases allowing discovery from CHIPS and other financial institutions, none holds that a district court *must* do so. Saul seeks to transform these discretionary determinations based on case-specific circumstances into a hard-and-fast rule. And Saul cites no case from this Court or any other court of appeals holding that a district court abused its discretion by denying an application targeting the Federal Reserve or CHIPS on the ground that the subpoenas were fishing expeditions. This Court should not be the first to limit the district court's discretion in such a manner. And in any event, the unique facts of this case render Saul's district-court cases inapposite. In none of Saul's cases did the petitioner make the startling concessions present here.

Saul's other arguments likewise fail to show an abuse of discretion.

Without citation, he asserts (Br. 41) that Samuel's 2014 tax returns were sufficient to warrant discovery against two targets, Citibank and Safra, because the presence of Brazilian affiliated entities in Exhibit 11 suggests that "Samuel[, not Michael, Eva, or any of their affiliated entities,] *may* have used" the U.S. affiliates of these banks. (emphasis added). This is pure speculation. Apparently, Saul believes doing business with a *foreign* bank in a *foreign* country is reason to justify a Section 1782 application against the *U.S.* affiliated bank, including concerning individuals and entities for which it has no good-faith basis for such a belief. That cannot be correct, and Saul cites no authority suggesting that it is.

28

Saul next notes (Br. 41-42) that the financial institutions have not claimed a burden. That is true, and it is something the district court considered. SPA26. But the lack of objections from the financial institutions did not overcome, in the district court's view, the complete absence of factual support for the subpoenas. The district court was well within its discretion in weighing these facts and coming to that conclusion.

### B. The Other *Intel* Factors Favor Denying Saul's Application

To buttress its fishing-expedition finding under *Intel* factor four, the district court found that two other *Intel* factors also favored denying Saul's Section 1782 application. SPA19-21, 22-23. Those rulings likewise show no abuse of discretion. But even if the Court thinks otherwise, the district court would still have been well within its discretion to give significant and dispositive weight to the fourth *Intel* factor and fishing-expedition finding. SPA27-28. Indeed, this Court has affirmed a denial of an application even though two factors "moderately favored granting the application" when the other two "weighed heavily against" relief. *Frasers Group*, 95 F.4d at 58. Here, the balance is not even that close.

**Factor One.** As this Court has explained, *Intel* factor one focuses on whether "for all intents and purposes" the petitioner seeks discovery from its opponent in the foreign litigation. *Id.* at 59. The critical inquiry is thus, as the district court explained (SPA19-20), whether the foreign tribunal has the "ability to control the evidence

29

sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application." *In re Porsche Automobil Holding SE*, 2016 WL 702327, *7 (S.D.N.Y. Feb. 18, 2016); *see In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) ("The relevant inquiry is whether the evidence is available to the foreign tribunal."), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).[7]

This Court's refinement of the first factor fits seamlessly with *Intel* itself, which focused on whether the "evidence" sought "may be outside the foreign tribunal's jurisdictional reach." 542 U.S. at 265. If the foreign tribunal can get the very documents sought from parties to the foreign proceedings, then this would counsel in favor of denying the application. *Id.*

Based on this standard, the district court correctly ruled (SPA19-21) that this factor weighs in favor of denial because Saul essentially seeks financial records of parties to the Brazilian proceedings. To get around this conclusion, Saul relies (Br. 28-29) on cases in which district courts have issued Section 1782 subpoenas to banks when the account holder was in a foreign proceeding. But those cases so held

---

[7]  *See also In re Request for Jud. Assistance from Dist. Ct. in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 526 (E.D. Va. 2010) ("[A]lthough this factor was originally expressed as a 'participant' versus 'nonparticipant' analysis under the facts presented in *Intel*, the true question at hand is whether the requested discovery is available to the foreign tribunal without the assistance of this Court.").

because they (1) focused narrowly on the party/nonparty status of the Section 1782 target in the foreign proceeding,[8] and/or (2) are based on factual findings that the records sought were not available from parties in the foreign proceeding.[9]

As just explained, the first reason is legally erroneous because this factor does not focus on formulistic party/non-party labels.  *See supra* p. 29-30.  And the second is inapposite here.  Unlike in those cases, Saul conceded that "the evidence [he] seek[s] here are [sic] financial records ***that are … also in the possession*** of Michael or the entities in question."  A1341 (emphasis added).  The district court relied on that concession.  SPA20 ("Saul does not dispute that, to the extent the parties have accounts at the U.S. financial institutions he has subpoenaed, they, as account holders, have access to and could access them were such material sought of them in a Brazilian proceeding.").  In the face of Saul's concession, the district court did not

---

[8]  *In re Application of Lake Holding & Fin. S.A.*, 2021 WL 2581427, *16-17 (S.D.N.Y. June 23, 2021); *In re Iraq Telecom Ltd.*, 2019 WL 3798059, *4 (S.D.N.Y. Aug. 13, 2019); *In re Furstenberg Fin. SAS*, 2018 WL 3392882, *6 (S.D.N.Y. July 12, 2018); *In re Application of Hornbeam Corp.*, 2014 WL 8775453, *4 (S.D.N.Y. Dec. 24, 2014); *In re Application of Setraco Nigeria Ltd.*, 2013 WL 3153902, *3 (M.D. Fla. June 19, 2013).

[9]  *In re Caterpillar Credito*, 2023 WL 6938264, *3 (S.D.N.Y. Oct. 20, 2023); *Lake Holding*, 2021 WL 2581427, at *16-17; *Iraq Telecom*, 2019 WL 3798059, at *4; *Furstenberg Fin.*, 2018 WL 3392882, * 6; *Hornbeam*, 2014 WL 8775453, at *4.

abuse of discretion to conclude this factor favors denying the application—regardless of what other courts may have decided on different factual records.[10]

**Factor Three.** Factor three is straightforward. The MOU contains an exclusive-jurisdiction clause in favor of jurisdiction in the Judicial District of São Caetano do Sul. A193. That clause does not include U.S. courts. As the district court explained (SPA22-23), the existence of a forum-selection clause can weigh against granting a Section 1782 application under *Intel* factor three because it shows an intent to avoid the bargained-for foreign proof-gathering restrictions. *See In re Alghanim*, 2022 WL 1423088, at *4 (holding and collecting cases holding that courts "in this District have determined that the petitioner's decision to enter into a forum-selection clause is a factor tha[t] can weigh against the granting of an application brought under section 1782").

In response, Saul spends pages (Br. 36-38) citing and quoting from cases generally addressing factor three. Those cases, however, do not address how to apply that factor to a forum-selection clause—the critical question here. And just as importantly, Saul offers no rebuttal to the cases cited by the district court finding

---

[10] Saul also speculates (Br. 31-32) that his adversaries in the Brazilian proceedings may conceal the financial records. He cites no evidence for such speculation. That aside, Saul did not raise this claim before the district court, so it is forfeited. *Nagle v. Marron*, 663 F.3d 100, 113 n.11 (2d Cir. 2011). A district court cannot abuse its discretion by failing to consider something a party never even raised.

32

that the presence of a forum-selection clause weighs against granting Section 1782 discovery. Saul once again fails to show that the district court's analysis here was so outside the normal as to be an abuse of discretion.

**Factor Two**. This factor, which concerns the nature and receptivity of the foreign tribunal in question, is largely irrelevant as the court gave it essentially no weight. SPA21-22. And even if it did weigh in favor of granting the application, Saul does not show that would even come close to outweighing the other factors.

### C. Saul's Quibbles With The District Court's Analysis Do Not Show An Abuse Of Discretion

As the district court correctly explained, the *Intel* factors are not to be applied mechanically. SPA27-28. Instead, the ultimate inquiry is whether in light of the pertinent facts of each case, granting the application would serve the statute's twin aims. *Kiobel*, 895 F.3d at 244. For example, in one case, this Court found no abuse of discretion in denying an application without considering ***any*** of the *Intel* factors, simply because the district court found that the Section 1782 applicant's "discovery efforts were 'inexcusably untimely' and would not provide an 'efficient means of assistance' to the foreign proceedings." *Nascimento v. Faria*, 600 F. App'x 811, 812 (2d Cir. 2015). Similar to the untimeliness in *Nascimento*, one pertinent fact here rises above the fray: Saul's concessions that he has ***no factual basis*** to seek discovery from these financial entities. Those concessions indisputably make his

33

application a fishing expedition that would not serve the twin aims of Section 1782 and would merely serve to harass his siblings.

Saul's quibbling with the narrow parts of the district court's reasoning under the four *Intel* factors cannot overcome the fishing-expedition finding based on his own concessions. Saul simply cannot show that the court's ultimate decision to deny his application was outside of the "range of permissible decisions," *Frasers*, 95 F.4th at 58—regardless of the details of any one particular *Intel* factor. This is not the district court's first Section 1782 application.[11] And in its experience, Saul's application was truly exceptional; even apart from the district court's thoughtful consideration of the *Intel* factors, that determination alone suffices for affirmance.

## II. ALTERNATIVELY, SAUL FAILED TO SATISFY THE "FOR USE" FACTOR

This Court can "affirm on any basis supported by the record." *Tru-Art Sign Co., Inc. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 220 (2d Cir. 2017). Here, the "for use" statutory factor provides another basis to affirm. This is

---

[11] *See, e.g.*, *In re DNG FZE*, 2024 WL 124694 (S.D.N.Y. Jan. 11, 2024); *Frasers Group PLC v. Gorman*, 2023 WL 6938284 (S.D.N.Y. Oct. 19, 2023), *aff'd*, 95 F.4th 54 (2d Cir. 2024); *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, 2020 WL 2793055 (S.D.N.Y. May 29, 2020); *Purolite Corp. v. Hitachi Am., Ltd.*, 2017 WL 1906905 (S.D.N.Y. May 9, 2017); *In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. & Logistic Sol.*, 60 F. Supp. 3d 419 (S.D.N.Y. 2014); *In re Application of Passport Special Opportunities Master Fund, LP*, 2016 WL 844833 (S.D.N.Y. Mar. 1, 2016).

34

so for two independent reasons. *First*, Saul has forfeited any argument on this factor. And, *second*, Saul did not meet this requirement on its own terms.

### A.     Saul Has Forfeited Any Argument On The "For Use" Factor

Issues addressed "in a perfunctory manner, unaccompanied by [any] effort at developed argumentation, … must be deemed waived[,] or, more precisely, *forfeited*." *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (quotations omitted). "Merely mentioning the relevant issue in an opening brief is not enough." *Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009). The appellant must "state the issue and advance an argument." *Id.* (quotation omitted). Here, Saul did neither.

The "for use" issue was fully briefed and presented below. It is an issue that the district court addressed, determined presented a "substantial hurdle" and "substantial barrier" to granting the application, but ultimately did not resolve. SPA13-18. And it is an issue that Saul has the burden of showing, *see, e.g.*, *Certain Funds*, 798 F.3d at 120, and that this Court reviews *de novo*, *see, e.g.*, *id.* at 117. Yet remarkably, Saul did not raise the "for use" requirements in his issues presented (Br. 5-6), as required by Federal Rule of Appellate Procedure 28(a). And he devotes (Br. 44-45) only one conclusory paragraph to the issue in the body of his brief. In that one paragraph, there is but one sentence generally asserting that Saul has met the "for use" factor because the documents sought are allegedly critical to showing that Michael concealed assets and embezzled money away from Samuel's estate. But

35

Saul fails to elaborate or explain how he would use that information (if true) in the foreign proceedings. That is the critical question. *See infra* p. 36-39. And that is the question on which the district court spent pages evaluating and all but deciding against Saul. SPA13-18.

Yet Saul did not try to refute the district court's detailed analysis. Saul's truncated paragraph does not provide even the slightest explanation why Saul contends that the district court erred on this factor. That is not adequate briefing on the "for use" issue to preserve it for appellate review. *See Meyer v. Seidel*, 89 F.4th 117, 129 (2d Cir. 2023) (finding waiver in part because the appellant "did not explain how the district court may have erred in its … analysis"); *see also Tripathy v. McKoy*, 103 F.4th 106, 118 (2d Cir. 2024) (finding an argument abandoned when the claims were mentioned "only in passing" and when the appellant failed "to articulate any specific reasons as to why the district court erred in dismissing them"). Thus, Saul has forfeited any argument on the "for use" factor. Nor is Saul able to patch this briefing hole on reply. As is well established, this Court will not consider "arguments raised for the first time in a reply brief." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 97 (2d Cir. 2007).

### B. The Discovery Is Not "For Use" In A Foreign Proceeding

As the district court recognized (SPA13-18), the discovery Saul seeks would not be "for use" in any relevant foreign proceeding, either civil or criminal.

**Civil Proceedings.** For documents to be "for use" in a "proceeding," the Section 1782 petitioner must have "the *practical ability* … to place [the documents sought]—or the information [they] contain[]—before a foreign tribunal" for consideration. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). The documents thus must be able to be "employed with some advantage" in the foreign proceeding. *Mees*, 793 F.3d at 298.

Here, the documents sought could not be used for any advantage in the Civil Proceedings. As the district court explained (SPA14-16) and as Saul concedes (Br. 45), his ultimate goal in the Civil Proceedings is to invalidate the MOU. But he will not be able to use the documents sought to achieve that purpose: The statute of limitations would bar Saul from introducing the documents in the Civil Proceedings. *See* SPA14-16. The Brazilian statute—which Appellees' expert supplied—states that "[t]he right to annul an amicable partition [like the MOU] shall expire in one (1) year, counted from the date of the partition" in the case of "error or willful misconduct, from the date of the act." A1157. And here, Saul argues (Br. 16) that he "was deceived and induced to error when he signed the MOU by Michael." *See* A24; SPA15. But any deception, error, and the signing of the MOU and its registration all happened in 2015. A1157-61. So the limitations period on any attempt to unravel the MOA on those grounds has run—making the documents

sought here irrelevant and not "for use" in the Civil Proceedings. They simply cannot be used for any practical advantage.

Saul's expert did nothing to undermine this logic. In fact, he did not even produce the relevant text of Article 657. A1093-97; *see* SPA15 (noting that Saul's expert did not translate the "full relevant text at issue"). All the cases he cited allegedly showing that the period does not begin to run until judicial ratification of a probate proceeding are inapposite. A1093-97. Those cases either predate the relevant amendment to the Brazilian Code of Civil Procedure addressing amicable partitioning by public deed or involve judicial partitioning, to which Article 657 does not apply. A1158-59; SPA16.

**Criminal Investigation.** The "for use" analysis is even simpler in the criminal context. This Court has unequivocally explained that "approaching a prosecutor's office claiming to have knowledge of a crime" would not satisfy the "for use" requirement. *Certain Funds*, 798 F.3d at 121. Likewise, in *IJK Palm v. Anholt Servs. USA, Inc.*, 33 F.4th 669 (2d Cir. 2022), this Court held that "discovery material is not 'for use' in a foreign proceeding if it must first be used to persuade a third party to initiate that proceeding." *Id.* at 678.

Those principles resolve the "for use" issue as it relates to the criminal investigation at issue here. As the district court found, all Saul seeks to do here is give documents to the Brazilian police claiming to have knowledge of a crime and

hope that the police investigation may eventually result in a prosecution. SPA17-18; *see supra* p. 9-10 (describing criminal investigation). Those actions do not show that the documents are "for use" in a "proceeding" before a foreign "tribunal."[12] And a contrary conclusion would have far-reaching consequences. Section 1782 discovery could be obtained by anyone in the world seeking to report a crime to a local police station for further investigation. While Section 1782 was intended to expand U.S. courts' assistance to foreign tribunals, it is hard to believe that Congress intended to open the courthouse doors that wide and to burden U.S. individuals and companies with such far-reaching discovery obligations.

## CONCLUSION

The order granting the motion to vacate and quashing the subpoenas should be affirmed.

---

[12] A "tribunal" in the Section 1782 context is an adjudicative body. The Brazilian police (or any police for that matter) do not adjudicate anything nor do they have the impartiality normally associated with a "tribunal." *Fonseca v. Blumenthal*, 620 F.2d 322, 324 (2d Cir. 1980) (holding that a "tribunal" must engage in "impartial adjudication"); *see ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 623 (2022) (Section 1782 "reaches only governmental or intergovernmental adjudicative bodies."); *In re Application for an Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456, 461 n.8 (2d Cir. 2014) (holding that a "tribunal must serve an "impartial role"); *In re Letters Rogatory Issued by Dir. of Inspection of Gov't of India*, 385 F.2d 1017, 1021 (2d Cir. 1967) (holding that a "tribunal" must have "complete objectivity" and stand apart from prosecutors). Thus, a police investigation cannot satisfy Section 1782.

DATED: June 28, 2024                    Respectfully submitted,

                                        /s/ William B. Adams

Nicholas J. Caluda                      William B. Adams
QUINN EMANUEL URQUHART                  Lucas Bento
   & SULLIVAN, LLP        QUINN EMANUEL URQUHART
711 Louisiana Street, Suite 500            & SULLIVAN, LLP
Houston, Texas 77002                    51 Madison Avenue, 22nd Floor
Telephone: (713) 221-7000               New York, New York 10010
                                        Telephone: (212) 849-7000

*Counsel for Movants-Appellees Altara RK Investments Limited, Altara NK*
*Investments Limited, Bahia VV NK Ltd., and Bahia VV RK Ltd.*

**KASOWITZ BENSON TORRES**              **KLUGER, KAPLAN, SILVERMAN,**
**LLP**                                 **KATZEN & LEVINE, P.L.**
*Co-Counsel for Specified Subset of*    *Counsel for Interested Party-Appellee*
*Respondent-Intervenor-Appellees*       *Michael Klein and Respondent-*
*Limited Liability Entities*            *Intervenor-Appellees Limited Liability*
                                        *Entitites*

By: /s/ Kenneth R. David                By: /s/ Alan J. Kluger
Kenneth R. David                        Alan J. Kluger, Esq.
1633 Broadway                           akluger@klugerkaplan.com
New York, New York 10019                Steve I. Silverman, Esq.
Tel.: (212) 506-1893                    ssilverman@klugerkaplan.com
Fax: (212) 835-5293                     Michael J. Mariani, Esq.
KDavid@kasowitz.com                     mmariani@klugerkaplan.com
                                        Citigroup Center, 27th Floor
                                        201 South Biscayne Blvd.
                                        Miami, Florida 33131
                                        Tel.: (305) 379-9000
                                        Fax: (305) 379-3428

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation in Second Circuit Local Rule 32.1(a)(4)(A) because it contains 9,548 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type, and according to the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

DATED:  June 28, 2024

*/s/ William B. Adams*
William B. Adams

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 28, 2024, I electronically filed the foregoing Brief with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using ACMS. I further certify that all participants in the case are registered ACMS users and will be served by ACMS.

*/s/ William B. Adams*
William B. Adams